IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   11-cv-02657-WYD-KLM

HOMER K. WARNER;
BETTY S. WARNER; and
COREY WARNER,

     Plaintiffs,

v.

CITIMORTGAGE, INC.,

     Defendant.

---

**ORDER**

---

I.     INTRODUCTION AND BACKGROUND

THIS MATTER is before the Court on Defendant CitiMortgage, Inc.'s Motion to Dismiss, filed October 12, 2012 [ECF No. 3]. Plaintiffs filed a response on November 9, 2011, and Defendant filed a reply on November 22, 2011.[1]

This case is involves Plaintiffs' claims for breach of a loan modification agreement, and for damages incurred when Defendant commenced state foreclosure proceedings. According to the allegations in the Complaint, Plaintiffs were unable to continue to pay the monthly mortgage on certain residential property in Parker, Colorado (the "Property") and requested a loan modification from Defendant. On

---

[1] Without seeking leave to do so, Plaintiffs filed a second "response" on December 16, 2011. Upon review of the second "response" I find that there is no information therein that would alter the findings and conclusions set forth in this Order.

October 21, 2009, the parties entered into a Forbearance Agreement, and on December 1, 2009, the parties entered what Plaintiffs have described as a Trial Payment Agreement that reduced Plaintiffs monthly payments to $1,457.04.  Plaintiffs allege that beginning December 1, 2009, they made twelve timely payments at the reduced rate, but "for some unknown reason," Defendant then refused further payment, and the Property was ultimately sold to Defendant at a foreclosure sale in August, 2011. Plaintiffs bring claims for breach of the Trial Payment Agreement, negligent infliction of emotional distress, and loss of income.  Plaintiffs demand the return of the Property, damages for loss of income, punitive damages, costs and attorneys' fees.

In the instant motion, Defendant has moved to dismiss each of Plaintiffs' claims. Defendant has expanded on the factual allegations set forth in the Complaint with specific citation to the documents referenced therein and other public records.[2] Defendant notes that Plaintiff Homer Warner obtained a loan for the purchase of the Property from ABN AMRO Mortgage Group and executed a Note in the principal amount of $268,500.  The Note was secured by a Deed of Trust signed by Plaintiffs Homer Warner and Betty Warner.  After closing, ABN AMRO assigned the Note and Deed of Trust to Defendant.  Defendant acknowledges that after October 21, 2009, the Plaintiffs made monthly payments under the Trial Payment Agreement, but that on June 23, 2010, Homer and Betty Warner filed a voluntary Chapter 13 petition in the United

---

[2]I may refer to the documents referenced in the Complaint and central to Plaintiffs' claims, and take judicial notice of certain public records, without converting Defendant's motion to dismiss into a motion for summary judgment.  *See City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1251 n.4 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

States Bankruptcy Court for the District of Colorado.

Pursuant to the amended Bankruptcy Plan confirmed on October 18, 2010, Homer and Betty Warner acknowledged that the Property "secure[d] an allowed secured claim," and surrendered the Property "to the holder of such claim." In addition, the Order confirming the Bankruptcy Plan states that "Creditors holding liens on property which the Plan specifies is to be surrendered by the Debtor(s) are hereby granted relief from the stay imposed by 11 U.S.C. § 362 and may enforce their rights in and to said property." Defendant then initiated real estate foreclosure proceedings in District Court of Douglas County, Colorado pursuant to C.R.C.P. 120; C.R.S. § 38-38-105. Defendant purchased the Property at a foreclosure sale on August 24, 2011, and the state court entered an order approving the sale on September 14, 2011.

II.     MOTION TO DISMISS

   A.     Standard of Review

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

B. Analysis

1. Breach of Contract Claim

Defendant first contends that the Bankruptcy Plan is *res judicata* barring each of Plaintiffs' claims, including their claim for breach of contact.[3] Pursuant to 11 U.S.C. § 1327(a), "the provisions of a confirmed plan bind the debtor and each creditor," and a confirmed plan is a binding determination of the rights and liabilities with respect to those bound by the plan. *In re Talbot*, 124 F.3d 1201, 1208 (10th Cir. 1997). Here, Plaintiffs Homer and Betty Warner's confirmed Chapter 13 plan provides that the Property would be surrendered pursuant to 11 U.S.C. § 1325(a)(5)(C) to the holder of the claim. In the context of a chapter 13 plan, "[a] 'surrender' of property means that the debtor relinquishes the property to the secured creditor. The secured creditor then takes possession of the property in accordance with applicable nonbankruptcy law." *Collier*

---

[3]Plaintiffs do not specifically respond to this argument except to state that there is no proof that Defendant is the holder on the Note or Deed of Trust. Plaintiffs do not explain why that fact is relevant to the legal issues before the Court. Moreover, Plaintiffs admit in their Complaint that Defendant is the assignee of the Note and Deed of Trust.

-4-

*on Bankruptcy*, ¶ 1225.03[5] (15th ed. 2006); *see also In re Robertson*, 72 B.R. 2 at 405 (Bankr. D. Colo. 1985) (the term "surrender" has been interpreted to mean the return or relinquishing of possession or control to the holder of a claim). Therefore, at a minimum, the doctrine of *res judicata* prevents Plaintiffs Homer and Betty Warner from contesting Defendant's right to initiate foreclosure proceedings.[4]

In the alternative, I find that Plaintiff's claim for breach of contract is barred by Colorado's Credit Agreement Statute of Frauds, which provides:

> Notwithstanding any statutory or case law to the contrary . . . no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought.

C.R.S. § 38-10-124(2). Colorado defines a credit agreement as:

> (I) A contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation;
>
> (II) Any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any of the credit agreements defined in subparagraphs (I) and (III) of this paragraph (a); and
>
> (III) Any representations and warranties made or omissions in connection with the negotiation, execution, administration, or performance of, or collection of sums due under, any of the credit agreements defined in subparagraphs (I) and (II) of this paragraph (a).

---

[4]To the extent Plaintiffs are contesting the validity of any orders entered during the state foreclosure proceedings, I am barred from considering such claims under either the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971) or principles of claim preclusion.

C.R.S. § 38-10-124(1)(a).  Finally, the statute provides that *"A credit agreement may not be implied under any circumstances,* including, *without limitation,* from the relationship, fiduciary or otherwise, of the creditor and the debtor or from performance or partial performance by or on behalf of the creditor or debtor, or by promissory estoppel.  C.R.S. § 38-10-124(3) (emphasis added).

Here, the so-called Trial Payment Agreement is a document bearing Defendant's insignia that states: "Beginning on 12/01/2009, Borrower shall pay the trial payment agreement as follows: (Due Date) 12/01/2009 (Amount) $1457.04; (Due Date) 01/01/2010 (Amount) $1457.04; (Due Date) 02/01/2010 (Amount) $1457.04."  The document references Plaintiff's loan number but is unsigned.  Therefore, Plaintiffs' claim for breach of the Trial Payment Agreement is barred by the Colorado's Credit Agreement Statute of Frauds.  While Plaintiffs contends that Defendant ratified the agreement by accepting an additional nine payments at the reduced amount, they do not explain why this fact would prevent dismissal under the Statute of Frauds.  Moreover, the statute clearly states that a credit agreement may not be implied under any circumstances including the performance or partial performance of the creditor or debtor.  I find that Plaintiffs' breach of contract claim fails as a matter of law and must be dismissed.

### 2.     Negligent Infliction of Emotional Distress and Loss of Income Claims

I now turn to Plaintiffs' claims for negligent infliction of emotion distress and loss of income.  According to the allegations in the Complaint, both claims are based on Defendant's alleged "lack of good faith" in scheduling and rescheduling a foreclosure sale of the Property.  Plaintiffs allege that they endured "needless pain and suffering . . . anxiety and emotional distress," and that Plaintiff Corey Warner incurred damages when he was "forced to take time away from his business resulting in lost income, which he could not afford."  While Plaintiffs assert a separate stand-alone claim for loss of income, this is really a claim for damages based on Defendant's alleged conduct with respect to scheduling the foreclosure sale.

Under Colorado law, a plaintiffs may recover for negligent infliction of emotional distress only if they were subjected to a direct threat of harm or an unreasonable risk of bodily harm.  *See Card v. Blakeslee*, 937 P.2d 846, 849 (Colo. App. 1996).  Here, the Complaint contains mere conclusory assertions of emotion distress, and does not allege that Plaintiffs were subjected to a threat of harm or an unreasonable risk of bodily harm. I find that Plaintiffs have failed to state a claim for negligent infliction of emotional distress and have failed to articulate any legal theory under which they would be entitled to compensation for time spent by Corey Warner in connection with his participation in the Rule 120 foreclosure proceedings.

III.     CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Defendant CitiMortgage, Inc.'s Motion to Dismiss, filed October 12, 2012 [ECF No. 3] is **GRANTED** and this case is **DISMISSED**.

Dated:  March 13, 2012

                                        BY THE COURT:


                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        Chief U. S. District Judge